NITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT COURT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. MKL01924 | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| HILDALGO CHAMBER OF COMMERCE, INC. D/B/A BORDERFEST, JOE VERA, RUTH HINOJOSA, EDUARDO G. VELA, MARY GARCIA, FRED KAZEMI, VICTOR RIOS, ALMA ALANIS, JUAN ZAMBRANO, ARNOLD GARCIA, ESTELLA MORON, AURORA MIJANOGS, AND ALEX ZUNIGA | § § § § § § § § § § | CIVIL ACTION NO. 7:19-cv-186 |
| *Defendants.* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff Certain Underwriters at Lloyd's, London Subscribing to Policy No. MKL01924, and files this Original Complaint for Declaratory Judgment.   Plaintiff would respectfully show the Court as follows:

### I.
### THE PARTIES

1.     Plaintiff Certain Underwriters at Lloyd's, London Subscribing to Policy No. MKL01924 is Liberty Syndicate 4472, a foreign insurance syndicate with its principal place of business at 20 Fenchurch Street, London, United Kingdom, EC3M 3AW.

2.     Defendant Hidalgo Chamber of Commerce, Inc. d/b/a BorderFest (HCOC) is incorporated under the laws of the state of Texas and maintains its principal place of business at 800 E. Coma St., Hidalgo TX 78557.   HCOC may be served via its registered agent, Joe Vera, at

800 E. Coma St., Hidalgo TX 78557, 1300 Houston Ave., McAllen, Texas 78501 or wherever Joe Vera may be found within the State of Texas. HCOC includes "Hidalgo Chamber of Commerce, Inc." and "Hidalgo Chamber of Commerce d/b/a BorderFest"

3.      Defendant, Joe Vera ("Vera"), is an individual residing in Hidalgo County, Texas, and may be served with citation at his place of employment the following location: 1300 Houston Ave., McAllen, Texas 78501 or wherever he may be found in the State of Texas.

4.      Defendant, Ruth Hinojosa ("Hinojosa"), is an individual residing in Hidalgo County, Texas, and may be served with citation at her place of residence, 1516 Toronto Ave., McAllen, Texas 78503 or wherever she may be found in the State of Texas.

5.      Defendant, Eduardo G. Vela ("Vela"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at his place of residence, 220 Bridge St., McAllen, Texas 78557 or wherever he may be found in the State of Texas.

6.      Defendant, Maria Garcia ("Garcia"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at her place of residence 504 Rose Ellen Cir., McAllen, Texas 78501 or wherever she may be found in the State of Texas.

7.      Defendant, Fred Kazemi ("Kazemi"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at his place of residence, 416 Frio St., Mission, Texas 78572 or wherever he may be found in the State of Texas.

8.      Defendant, Victor Rios ("Rios"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at his place of residence, 4110 N. Jackson Rd., Pharr, Texas 78577 or wherever he may be found in the State of Texas.

2

9.  Defendant, Alma Alanis ("Alanis"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at her place of residence, 146 E. Nebraska Rd., Alamo, Texas 78516 or wherever she may be found in the State of Texas.

10.  Defendant, Arnold Garcia ("Garcia"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at his place of residence, 7320 N. 32nd St., McAllen, Texas 78504 or wherever he may be found in the State of Texas.

11.  Defendant, Estella Moron ("Moron"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at her place of residence, 952 S. Gumwood St., La Villa, Texas 78562 or wherever she may be found in the State of Texas.

12.  Defendant, Juan Zambrano ("Zambrano"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at his place of residence, 309 Campo Verde Cir., San Juan, Texas 78589 or wherever he may be found in the State of Texas.

13.  Defendant, Aurora Mijanogs ("Mijanogs"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at her place of residence, 910 Monterrey St. Hidalgo, Texas 78557 or wherever she may be found in the State of Texas.

14.  Defendant, Alex Zuniga ("Zuniga"), is an individual residing in Hidalgo County, Texas, and may be served with citation at citation at his place of residence, 206 Remington Ave., Edinburg, Texas 78539 or wherever he may be found in the State of Texas.

## II.
## JURISDICTION & VENUE

15.  This Court has jurisdiction over this dispute under 28 § U.S.C. 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000) and there is complete diversity of citizenship among the parties.

16.     Venue is proper in the Southern District of Texas, McAllen Division as all or a substantial amount of the events giving rise to this dispute occurred within Hidalgo, Hidalgo County, Texas.

**III.**
**FACTS**

17.     "Hidalgo Chamber of Commerce d/b/a BorderFest" was insured by Certain Underwriters at Lloyd's, London Subscribing to Policy Number MKL01924, effective from November 17, 2015 to November 17, 2016 (hereinafter "Policy"). Underwriters seek declaratory judgment as to what Policy rights and obligations exist between Underwriters, on the one hand, and Defendants, on the other, in regard to a lawsuit styled *City of Hidalgo, v. Joe Vera d/b/a BorderFest Association, et al.,* Cause No. C-0217-16-I in the 398th Juridical District Court of Hidalgo County, Texas. (hereinafter the "*BorderFest* lawsuit"). Said lawsuit was filed on or about February 14, 2016.

18.     All Defendants in this declaratory judgment action are defendants in the *BorderFest* lawsuit. All Defendants have interests that are judiciable in this declaratory judgment action as, subject to a reservation of all rights, Underwriters are providing the Defendants a defense against the *BorderFest* lawsuit.

19.     In the *BorderFest* lawsuit, the City of Hidalgo's ("City") current pleadings are "Plaintiff's Fourth Amended Original Petition and Application for Temporary Restraining Order and Temporary Injunction," (said pleadings hereinafter referred to as "City's Pleadings") The City's Pleadings allege Vera entered into a City Managers Agreement with the City in in 2011 Vera. City's Pleadings at ¶ 14. The City's Pleadings allege during his tenure as City Manager, Vera allegedly defrauded the City by registering the BorderFest trademark in the name of the BorderFest Association and not in the name of the City. *Id.* at ¶ 9. The City's Pleadings allege

Vera violated fiduciary duties owed to the City by appropriating the BorderFest trademark for BorderFest Association rather than the City. *See id.* at ¶ 10. The City's Pleadings allege misappropriation of the BorderFest trademark damaged the City in many ways, causing the City to spend a lot of money that it now contends constituted "illegal gifts" to the Defendants and/or BorderFest Association. *Id.* at ¶ 11. The City contends the alleged misappropriation was "theft" of the city's "intellectual property." *Id.* at ¶ 13.

20.     The cornerstones allegations of the City's Pleadings are allegations that Vera, while Vera was City Manager for the City of Hidalgo, (a) misappropriated the BorderFest trademark for the BorderFest Association and/or (b) did not disclose to the City that the BorderFest Association held the BorderFest trademark and not the City. These actions allegedly breached legal duties Vera owed the City on account of his status as City Manager. *See e.g. id.* at ¶ 8 ("Vera was the City Manager of the City of Hidalgo and was directly involved with Hidalgo's BorderFest event for many years as its City Manager), *Id.* at ¶ 9 ("Vera claims that, while he was employed with Hidalgo, he initiated efforts to appropriate the BorderFest name"), *Id.* at ¶ 10 ("at all times while Mr. Vera worked for the City of Hidalgo") ¶ 11 ("As a trained and experienced city manager, [Vera] was aware . . . ") *Id.* at ¶ 12 (The City's "unique and unquantifiable property in the BorderFest name and event has been misappropriated by a private individual . . .") *Id.* at ¶ 13 ("The theft of [the City's] intellectual property and continued misappropriation of the name and event . . . ") *Id.* at ¶ 14 ("In 2011, Vera entered into a City Manager Agreement with the City of Hidalgo . . .").

21.     All causes of actions and remedies the City asserts in the *BorderFest* lawsuit are derivative of these two cornerstone allegations. In the City's Pleadings at ¶ 19 the City seeks declaratory judgment that "Defendants illegally and fraudulently obtained the trademark name of

BorderFest in violation of the rights of Plaintiff Hidalgo" and that Vera violated his "ethical, contractual, and fiduciary responsibilities to his long-time employer, the City of Hidalgo." In the City's Pleadings at ¶ 20 the City alleges the Defendants "fraudulently utilized City of Hidalgo resources and the City's name and prestige in order to convince the City's congressional representatives and federal trademark authorities to issue the BorderFest trademark to Vera and BorderFest Association." In ¶ 21 of the City's Pleadings the City alleges "Vera and BorderFest Association intentionally and fraudulently misrepresented to federal trademark officials they were authorized by [the City] to obtain the BorderFest trademark for Defendant BorderFest Association." In ¶ 22 of the City's Pleadings the City alleges "Vera and BorderFest Association intentionally and fraudulently failed to inform [the City] that they were seeking to trademark the BorderFest name for Defendant BorderFest Association." In ¶ 23 of the City's Pleadings the City alleges "Defendants Vera and BorderFest Association negligently misrepresented to [the City] that they were seeking to trademark the BorderFest name for the City of Hidalgo." In ¶¶ 24-25 of the City's Pleadings the City alleges Vera breached fiduciary duties he owed the City as a result of his service as City Manager for Hidalgo. In ¶¶ 26-27 of the City's Pleadings the City alleges the alleged misappropriation of the BorderFest trademark breached fiduciary duties the BorderFest Association owed the City. In ¶¶ 28-29 of the Pleadings the City alleges the alleged misappropriation of the BorderFest trademark means that any sponsorships obtained by Vera and Border Fest Association were a conversion of the City's assets. In ¶¶ 30-31 of the City's Pleadings the City alleges that because of the misappropriation of the BorderFest trademark any revenues generated by BorderFest rightfully belonged to the City and have been wrongfully converted by Vera and the BorderFest Association. In ¶¶ 32-33 of the City's Pleadings the City alleges as a result of the misappropriation of the BorderFest trademark any floats, props and equipment owned

by the BorderFest Association rightfully belonged to the City of Hidalgo but were wrongfully converted by the Defendants.  In ¶¶ 34 of the City's Pleadings the City alleges Vera breached the 2011 City Manager Agreement between Vera and the City. In ¶ 35 of the City's Pleadings the City alleges that in the event the Vera and/or the BorderFest Association are the true owner of BorderFest, "all the direct and indirect funds Hidalgo has expended towards the BorderFest event . . . for the last 30 years constitute illegal gifts to Defendants," and the City is allegedly entitled to recovery of all such funds.  In ¶¶ 36-37 of the City's Pleadings the City alleges Vera and/or the Defendants were negligent in their management and governance of the BorderFest event.  But when placed in the context of the City's full pleadings it is clear the only factual transaction alleged by the City are the cornerstone allegations that Vera and the BorderFest Association, while Vera was City Manager for the City of Hidalgo, (a) misappropriated the BorderFest trademark for the BorderFest Association and/or (b) did not disclose to the City that the BorderFest Association held the BorderFest trademark and not the City.  There are no facts pleaded anywhere within the City's petition to support any cause of action sounding in negligence.

## IV.
## RELEVANT POLICY LANGUAGE

22.     The Policy in question is Lloyd's of London Non-Profit Directors & Officers Liability Insurance Policy No. MKL01924, effective dates November 17, 2015 to November 17, 2016 ("Policy").  The named insured on the Policy was "Hidalgo Chamber of Commerce d/b/a Border Fest."  Any coverage potentially available under the Policy was subject to all terms, conditions, limitations, exclusions, endorsements or other language contained within the Policy. Among the various provisions within the Policy relevant to the *BorderFest* lawsuit and this Declaratory Judgment Action are the following:

This Policy has been issued in reliance upon the **Application**, which is deemed attached to and incorporated into this Policy and therefore forms a part of this Policy. . . .

**Section I. Insuring Agreements**

A.    If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against any **Insured Person** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Insured Persons, Loss** and **Costs of Defense** resulting from such **Claim**, except for any **Loss** or **Costs of Defense** which the **Organization** or any **Subsidiary** actually pays as an indemnity.

B.    If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against any **Insured Person** for a **Wrongful Act**, the Insurer shall pay on behalf of the **Organization** or any **Subsidiary**, **Loss** and **Costs** of **Defense** resulting from such **Claim** but only to the extent the **Organization** or any **Subsidiary** is required or permitted by law to indemnify the **Insured Persons**.

C.    If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against the **Organization** or any **Subsidiary** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Organization** or any **Subsidiary**, **Loss** and **Costs of Defense** resulting from such **Claim.**

\* \* \*

**Section III.  Definitions**

A.    **"Claim** shall mean:

(1)    a written demand for monetary or non-monetary (including injunctive) relief made against any **Insured**;

(2)    a civil proceeding, including any appeals therefore made against any **Insured** seeking monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar pleading.

\* \* \*

H.    **"Insured Persons"** shall mean all persons who were, or are, or shall be **Employees**, directors, trustees, officers, regents, governors, members of the Board of Managers, including any executive board members and committee members whether salaried or not and those persons serving in a functionally equivalent role for the **Organization** or any **Subsidiary** operating outside of the United States.

8

I.  **"Loss"** shall mean settlements, judgments, pre-judgment and post-judgment interest, front and back pay, compensatory damages, and the multiple portion of any multiplied damage award incurred by the **Insured**. **Loss** shall also include punitive or exemplary damage, except where coverage for such damages is prohibited by law or public policy. **Loss** shall not include:

    (1)    Criminal or civil fines or penalties imposed by law, or taxes (except for the 10% "excess benefit" tax assessed by the Internal Revenue Service against any **Insured Person** pursuant to 26 USC Section 4958 (a)(2).

*   *   *

    (3)    any amounts which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

    It is understood that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for compensatory, punitive, or exemplary damages or the multiple portion of any multiplied damage award.

*   *   *

O.  **"Related Wrongful Act"** shall mean **Wrongful Acts** which are causally connected by reason of any common fact, circumstances, situation, transaction, casualty, event or decision.

*   *   *

R.  **"Wrongful Act"** shall mean:

    (1)    any of the following by the **Organization**, and/or by and **Subsidiary**, and/or by any **Insured Person** acting solely in their capacity as an **Insured Person**:

    (1)    actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty;

*   *   *

**Section IV. Exclusions**

This Policy does not apply to any **Claim** against any **Insured**:

A.  brought about or contributed to by: (1) any **Insured** gaining any profit, advantage or remuneration to which they were not legally entitled; or (2)

9

the deliberate fraudulent or criminal acts of any **Insured**; however, this exclusion does not apply unless it is finally adjudicated such conduct in fact occurred;

\* \* \*

F.    for any **Wrongful Act** of any **Insured Person** in their respective capacity as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an entity other than the **Organization**, any **Subsidiary**, or **Outside Entity;**

\* \* \*

I.    for any actual or alleged breach by the **Organization** or any **Subsidiary** of an express or implied contract, except for employment related obligations which would have attached absent such agreement;

J.    Other than **Costs of Defense**:

    (1)    For any obligation of the **Organization** or any **Subsidiary,** as a result of a **Claim**, seeking relief or redress in any form other than money damages, including but not limited to any obligations of the **Organization** or any **Subsidiary** to modify any building or property.

23.    By quoting and referencing certain provisions above Underwriters do not mean to waive any other Policy term, condition, limitation or exclusion not quoted or referenced herein. Underwriters incorporate the entire Policy into these pleadings by reference as if said Policy were quoted in entirety herein. Underwriters specifically reserve all rights and defenses available to them under the Policy, any law, and inequity.

## V.
## GROUNDS FOR DECLARATORY JUDGMENT

24.    This action for Declaratory Judgment is brought under Title 28 U.S.C. § 2201 and FED. R. CIV. P. 57. Underwriters seek a declaration of the rights, liabilities and other legal relations between the parties under the relevant Policy regarding the *BorderFest* lawsuit. Conflict has arisen between Underwriters on the one hand, and Defendants, on the other hand, about what liabilities,

if any, Underwriters owe Defendants with regard to the *BorderFest* lawsuit. The burden is upon Defendants to prove coverage. Defendants cannot prove coverage.

25.     "Hidalgo Chamber of Commerce d/b/a Border Fest" is not the same entity as "BorderFest Association." The Policy insures the "Hidalgo Chamber of Commerce d/b/a Border Fest." The "BorderFest Association" identified with the City's Pleadings is "purportedly an unincorporated association purportedly doing business in Hidalgo County, Texas." Because the *BorderFest* lawsuit is not against an insured or additional insured, Underwriters owe the Defendants no Policy duties to indemnify and defend them against the *BorderFest* lawsuit. The Defendants are not named insureds or additional insureds under the Policy.

26.     The Policy provides that the Application is deemed attached to and incorporated into the Policy and therefore forms a part of the Policy. Defendants, through their authorized agent and representative Hinojosa, affirmatively represented no "person or entity proposed for this insurance is cognizant of any fact, circumstances or situation . . . . which might afford grounds for any claim that would fall within the scope of the proposed insurance." This representation was a false representation. Prior to the inception of coverage under the Policy the Defendants were aware of deteriorating relations between the Defendants and the City and were cognizant of the various facts or circumstances that eventually gave rise to the *BorderFest* lawsuit. Misrepresentations contained in an insurance application process constitute defenses to coverage or insurability and allow rescission of coverage. Underwriters would show the (1) Defendants' making of a representation; (2) the falsity of said representation in that Defendants were cognizant of various facts and circumstances that made it likely a Claim such as the *BorderFest* lawsuit would arise during the Policy period; (3) reliance upon the representation by the Underwriters; (4) the intent to deceive on the part of the Defendants in making the representation as Defendants intended

11

Underwriters to rely upon the representation; and (5) the materiality of the representation in that the Underwriters would have declined to issue the Policy or charged a higher premium for the Policy. Underwriters seek rescission of the Policy.

27.     The Policy excludes any **Claim** against brought about or contributed by (1) any **Insured** gaining any profit, advantage or remuneration to which they were not legally entitled; or (2) the deliberate fraudulent or criminal acts of any **Insured**. The *BorderFest* lawsuit alleges the Defendants wrongfully gained profits, advantages, and remunerations to which they were not legally entitled to, and/or the Defendants engaged in deliberate fraudulent or criminal acts. Accordingly, the *BorderFest* lawsuit does not trigger coverage.

28.     The Policy excludes any **Wrongful Act** of any **Insured Person** in their respective capacity as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an entity other than the **Organization**, any **Subsidiary**, or **Outside Entity**. The City alleges Vera breached duties owed to the City as a result of his prior status as City Manager of the City.   Accordingly, the *BorderFest* lawsuit does not trigger coverage.

29.     The Policy excludes any obligation of the of the **Organization** or any **subsidiary,** as a result of a **Claim**, seeking relief or redress in any form other than money damages, including but not limited to any obligations of the **Organization** or any **Subsidiary** to modify any building or property. The City's pleadings for Declaratory Judgment concerning the right of ownership of the *BorderFest* trademark and its pleadings for the return of various property and floats are not claims for monetary relief that trigger coverage under the Policy.

## VI.
## RELIEF SOUGHT

30.     Underwriters seek declaratory judgment the pleadings of the *BorderFest* lawsuit do not trigger the Policy duties to indemnity and/or defend Defendants against said lawsuit. Coverage

12

is not triggered because the "BorderFest Association" and the Defendants as joined to the *BorderFest* lawsuit and described within the City's Pleadings are not insureds or additional insureds under the Policy and are not entitled to any benefits under the Policy.

31.    Alternatively, Underwriters seek declaratory judgment that rescission of the Policy is an appropriate remedy based upon the Defendants' intentional misrepresentation in not disclosing within the application the facts and circumstances from which the *BorderFest* lawsuit arose.

32.    Alternatively, Underwriters seek declaratory judgment that the *BorderFest* lawsuit is excluded from coverage in whole or in part under the various exclusions set forth above and said *BorderFest* lawsuit does not trigger the duty to defend and/or the duty to indemnify the Defendants against same.

33.    Underwriters seek attorney fees and all other remedies available to Underwriters under law or equity as the prevailing party to this declaratory judgment action.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Certain Underwriters at Lloyd's, London Subscribing to Policy No. MKL01924 requests Defendants be summoned to appear, that Plaintiff receive favorable declaratory judgment in its favor that the *BorderFest* pleadings invoke no Policy duties to indemnify or defend any of the Defendants joined to this action, and that the Defendants take nothing as a result of these proceedings.   Plaintiff further prays for the recovery of the reasonable and necessary attorney fees and costs of court incurred by them in bringing this action. Plaintiff prays for such other and further relief to which it may prove itself entitled under equity or law.

Respectfully Submitted,

DONATO, MINX, BROWN & POOL, PC

Mark A. Youngjohn
    Attorney in Charge
Federal ID No. 431054
Texas State Bar No. 24028247
Brook F. Minx
    Of Counsel
Federal ID No. 18723
Texas State Bar No. 00789905
3200 Southwest Frwy., Suite 2300
Houston, Texas 77027
Tel: (713) 877-1112
Fax: (713) 877-1138

ATTORNEYS FOR PLAINTIFF CERTAIN
UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY NO. MKL01924